Dykman, J.
(dissenting).—This action is brought to establish a benefaction from the intestate of the defendants, and to recover the property bestowed, and the proceeds of such portion thereof as have been disposed of by them.
It is the claim of the plaintiff's that the intestate of the defendants gave the property described in the complaint to them and their mother, who has assigned her claim to them, in the prospect and contemplation of" his death.
The cause was tried at the circuit, and the close of the plaintiffs’ testimony their complaint was dismissed on the ground that the transaction proven did not constitute a valid gift.
The decision of the trial court is to be examined and tested on the assumption that the testimony adduced is true, and we are required to determine whether in that view a valid donatio causa mortis has been established by the plaintiffs’ proof.
On the morning of the 18th day of March, 1884, Mr. Sharpsteen, the deceased intestate, was very sick and was advised by his physician that his recovery was doubtful. About ten o’clock in the forenoon of that day he caused the box containing his securities to be placed on his bed and opened and he then took from it an envelope containg two bonds belonging to Harry Thurston, together with ten other bonds for $1,000 each, and placed the ten bonds and the envelope together and put a strap around them, and directed Harry Thurston to take them down stairs and put them in the safe.
Then he said he desired Virginia Sherrill to have five Wilksbarre bonds in payment of a note which she held *17 against him. These Wilksbarre bonds were not among those delivered to Harry Thurston. Then in the language of the witness: “he says T don’t want the folks to object. ’ I says, ‘ who do you mean by the folks? ’ ‘ Do you mean mother and the children?’ He says, ‘yes.’ I says, ‘they won’t object.’ He says, ‘I don’t want them to, I don’t want them to; I have not got very much money, I have not got much, but what I have I give them, and I want you to carry out my arrangements.’ ”
Q. Who was referred to in your intercourse with him by the term mother ?
1. Mrs. Halsted.
Q. She was your mother-in-law ?
A. Yes, sir.
Q. What did you do after that ?
A. Well, there was nothing of any importance or between us until just before I left the room. The doctor came at that time, or came to the door and roused up and said to me, “ Isaac I want you to take the box, lock it up, take it over to_ your office, and either he said to your office, or take it and put in your safe, I am not positive which, but I think put it in your safe, and take care of it, he either said one or the other, I think he said over in your safe and take care of it.
Q. What did you do ?
A. I took the box, locked it up, and took it over.
Mr. Sharpsteen died the next day.
Gifts causa mortis had a well recognized place in the Roman civil law, and under that system of jurisprudence very formal solemnities were prescribed to ensure their validity. Under the common law of England, however, no special ceremony is required, but the courts are cautious and require clear proof of the gift and of the delivery of the property to the donee or to some person for him, and then the donation becomes perfected by the death of the donor.
It is essential that the gift be made with a prospect of the donor’s death, and he must die of that ailment or peril, and there must be a delivery, and all these requisites must concur in every case to afford validity to the gift.
In this case the testimony discloses the clear and unequivocal intention of the deceased to bestow the property on the plaintiffs and their mother. His language was: “I have not got much, but what I have I give to them, and I want you to carry out my arrangements.” The donation was made in prospect of approaching dissolution, and the donor actually died the next day of the ailment that brought him in view of death. These two facts were not seriously controverted, and the donation became perfect, *18 and the title vested on the death of the donor if there was a sufficient delivery to supply the requirements of the law.
It is not essential that such delivery should be to the donees personally. A valid gift is established if a delivery of the subject of the gift be made to the donees or to some person for them, so as to divert the possession and title of the donor himself.
If a delivery be made to a third person with intent to divert the title and possession of the donor, and to vest in the donees dominion and control over the property, it is sufficient to validate the gift. Bedel v. Carll, 33 N. Y., 581; Westerlo v. De Witt, 36 id., 345; Grymes v. Hone, 49 id., 17; Young v. Young, 80 id., 622; Jackson v. Twenty-third Street R. R. Co., 88 id., 520.
In this case the proof shows that the intestate declared the gift by saying, what I have I give them, and I want you to carry out my arrangement. Then as the doctor came to the door he roused up and said: “Isaac, I want you to take the box, lock it up, take it over to your office, or take it and put it in your safe and take care of it, and the box was locked and taken in obedience to that direction.
The intention of the donor is a necessary element in the case, and if by the request to carry out his arrangements, he referred to the gift then declared, and if he delivered the box and securities to facilitate the execution of his purpose and placed them in the possession and control of Isaac to be delivered to the donees in the event of his death, the essential requisites of a valid delivery were established.
The inference of such intention from the circumstances and facts disclosed by the testimony would create no strain, and if drawn by a jury would certainly not be destitute of support. Reduced to words, the transaction was this: The donor said in substance, “I give all my property to the plaintiffs, and I wish you to carry out my arrangements, and for that purpose I desire you to take the box with the securities, lock it up and take it over to your office and take care of it until my death, for if I recover, the gift I have made will be invalid and void.” Isaac was to take the box to carry out the arrangements,- otherwise it would have .been returned to the bank and deposited there as it had been. There was no other apparent reason for change of the custody or of the custodian of the box and securities.
This examination leads to the conclusion that the case should have been submitted to the jury under proper instructions for the solution of the questions of fact involved.
It appears that the securities claimed by the plaintiffs were inventoried by the personal representatives of the *19 deceased as a portion of his estate, but that fact can be allowed no force against these plaintiffs.
The judgment should be reversed and a new trial granted, with costs to abide the event.